**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**BUCK CONSTRUCTION, LLC,**

                **Plaintiff,**

       v.                                      **6:17-CV-275
(FJS/TWD)**

**MURRAY CORPORATION,**

                **Defendant.**

---

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **BOWITCH & COFFEY, LLC**<br>17 Elk Street<br>Albany, New York 12207<br>Attorneys for Plaintiff | **DANIEL W. COFFEY, ESQ.** |
| **LAW OFFICES OF THERESA<br>J. PULEO**<br>Salina Meadows Office Park<br>301 Plainfield Road, Suite 210<br>Syracuse, New York 13212<br>Attorneys for Defendant | **MICHELLE M. DAVOLI, ESQ.** |

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court are Defendant's motion to dismiss Plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, *see* Dkt. No. 11, and Plaintiff's cross-motion to amend its complaint, join a non-diverse party, and remand this action to state court or, in the alternative, for an order permitting limited discovery regarding the issue of personal jurisdiction, *see* Dkt. No. 17.

## II. BACKGROUND

Plaintiff is a New York LLC operating out of Whitesboro, New York. Defendant is a corporation registered in Maine with its principal place of business in Maryland and manufacturing operations in Ontario, Canada.

Defendant designs, manufactures, and sells clamps and fasteners for industrial and commercial hose applications. *See* Dkt. No. 2, Complaint, at ¶ 7. One such product is the Murray PEX 233 pinch clamp, which is intended to be used to seal a hose onto a fitting. *See id.* at ¶¶ 9-10. Plaintiff asserts that it purchased a Murray PEX 233 from Utica Plumbing Supply, installed it for its intended purpose, and that, shortly thereafter, the Murray PEX 233 failed, causing water damage to Plaintiff's property. *See* Dkt. No. 17-6 at ¶¶ 20-23. Plaintiff claims that the Murray PEX 233 was defective as designed and at the time it was distributed. *See* Dkt. No. 2 at ¶¶ 15-16. Based on these allegations, Plaintiff asserts products liability, breach of warranty, and negligence claims against Defendant. *See id.* at ¶¶ 22-27.

Plaintiff commenced this action on February 9, 2017, in New York Supreme Court, Oneida County. *See* Dkt. No. 2. On February 28, 2017, Plaintiff served Defendant with a Summons and Complaint. Subsequently, on March 9, 2017, Defendant filed a notice of removal to this Court, relying on this Court's diversity jurisdiction because Plaintiff is a citizen of New York and Defendant is a citizen of Maryland and Maine. *See id.* After removal, Defendant filed the pending motion to dismiss Plaintiff's complaint for lack of personal jurisdiction. *See* Dkt. No. 11.

In response to Defendant's motion, Plaintiff cross-moved to amend its complaint and to join

Howland Pump and Supply Company, Inc. ("Howland Pump") as a defendant.[1] *See* Dkt. No. 17. Howland Pump is a New York Corporation. Therefore, if the Court were to grant Plaintiff's cross-motion to join Howland Pump as a defendant, the Court would lack diversity jurisdiction over this case and would have to remand this action to state court.

### III. DISCUSSION

**A.     Plaintiff's cross-motion to amend its complaint to assert additional factual allegations**

A court should grant leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment" will serve as a ground to deny an amendment prior to trial. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In its proposed amended complaint, Plaintiff seeks to add several allegations regarding the issue of personal jurisdiction.[2] Defendant mostly ignores Plaintiff's cross-motion to amend in its response, instead, arguing, in general terms, that Plaintiff's cross-motion to amend is impermissible forum shopping. *See* Dkt. No. 18-2 at 12.

As an initial matter, the Court notes that, because Defendant has moved to dismiss Plaintiff's complaint for lack of personal jurisdiction, it would be futile to allow Plaintiff to amend its complaint if, in its proposed amended complaint, Plaintiff has failed to plead facts sufficient to

---

[1] Howland Pump is the corporate owner of Utica Plumbing Supply, the retailer from which Plaintiff purchased the allegedly defective clamp. *See* Dkt. No. 17-6 at ¶ 15.

[2] Plaintiff also seeks to add Howland Pump as a Defendant in this action. The Court will discuss the joinder of a non-diverse party separately.

-3-

establish a *prima facie* showing that personal jurisdiction over Defendant exists. Therefore, to determine whether to grant Plaintiff's cross-motion to amend its complaint, the Court will review the proposed amended complaint in light of Defendant's motion to dismiss for lack of personal jurisdiction.

**B.     Personal jurisdiction**

*1. Standard of review*

"'[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.'" *Belabbas v. Inova Software Inc.*, No. 16 Civ. 7379, 2017 WL 3669512, *2 (S.D.N.Y. Aug. 24, 2017) (quoting *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013))). Furthermore, this "prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013) (citation omitted)). Finally, when "'deciding a pretrial motion to dismiss for lack of personal jurisdiction,' a district court has 'considerable procedural leeway' and 'may determine the motion on the basis of affidavits alone.'" *Id.* (quoting *Dorchester*, 722 F.3d at 84). "Where a court relies on pleadings and affidavits, it 'construe[s] the pleadings and affidavits in the light most favorable to plaintiff[], resolving all doubts in [its] favor.'" *Id.* (quotation omitted).

*2. Plaintiff's proposed amended complaint*

In its proposed amended complaint, Plaintiff alleges that Defendant "committed a tortious

act outside of New York causing injury to property within the state[]," *see* Dkt. No. 17-6 at ¶ 6; "should reasonably expect its tortious act to have consequences in the state[,]" *see id.* at ¶ 7, "derives substantial revenue from interstate or international commerce[,]" *see id.* at ¶ 8, "regularly solicits business in New York[,]" *see id.* at ¶ 9, "engages in persistent conduct in New York[,]" *see id.* at ¶ 10, and "transacts business in New York[,]" *see id.* at ¶ 11. Plaintiff also alleges that Defendant "markets its clamps and fasteners for use across the worldwide agriculture, automotive, heavy-duty truck, off highway, municipal, marine, irrigation, beverage, and plumbing markets, including customers in the State of New York." *See id.* at ¶ 13. Moreover, Plaintiff asserts that Defendant "marketed in New York State and/or knew, or should have known that the products [it] designed, manufactured and/or distributed would be sold and/or used in New York State." *See id.* at ¶ 16. Finally, Plaintiff contends that Defendant "manufactured and/or designed" its Murray PEX 233 pinch clamp for use in New York. *See id.* at ¶ 17.

In support of its cross-motion to amend its complaint, Plaintiff submitted the affidavit of Steven Buck, its Managing Member, in which he states that Defendant

> holds itself out as a worldwide leader for PEX clamping. A look at [its] website shows that [Defendant] holds itself out as an international company with manufacturing facilities across the world (US, Canada, India and China). It offers it's [sic] website in four different languages, and through the "contact us" tab, customers all over the world, including those in Whitesboro[,] New York can contact and purchase [Defendant's] products directly . . . . [Defendant] also offers a sophisticated electronic catalog offering for sale hundreds of [its] products. Also, through [Defendant's] website, it is possible to order [its] products directly and ship them into New York.

*See* Dkt. No. 17-1, "Buck Aff.," at ¶ 8.

Mr. Buck avers that Plaintiff purchased the defective clamp from Utica Plumbing Supply on

February 12, 2015, for a project at 783 Merrick Road in Whitesboro, New York. *See id.* at ¶¶ 5-6. Mr. Buck also states that Plaintiff "purchased two hundred of these clamps for this project, and they were picked up by the plumbing subcontractor for the job." *See id.* at ¶ 6. The invoice that shows that Plaintiff purchased the allegedly defective clamp also indicates that Plaintiff purchased several other Murray clamps. *See id.* & Exhibit "A" attached thereto.

Mr. Buck also states that he had used Defendant's clamps and products previously and recognized the "Murray" trade name written on each clamp. *See id.* at ¶ 9. According to Mr. Buck, Defendant's "incorporation of the 'Murray' tradename into [its] product design is one part of [Defendant's] prolonged and successful campaign to advertise and sell its products across the world and in New York State." *See id.* Mr. Buck further asserts that Plaintiff "has used thousands of [Defendant's] products since [Plaintiff] was founded in 1963 and all of [its] projects have been in New York State." *See id.* at ¶ 10.

In support of its motion to dismiss for lack of personal jurisdiction, Defendant submitted the affidavit of Thomas Branch, its Operations and Purchasing Manager. *See* Dkt. No. 11-7. In his affidavit, Mr. Branch states that Defendant "is in the business of manufacturing various types of clamps, including the PEX clamp at issue in this matter, for use in plumbing systems." *See id.* at ¶ 5. According to Mr. Branch, "[t]he clamps were originally designed by Oetiker Corporation in Europe." *See id.* Thereafter, the clamps "were redesigned to meet standards set by the American Society for Testing and Materials[.]" *See id.* The clamps were originally manufactured in Defendant's processor in Ontario and then shipped to Defendant's plant in Maryland for any final adjustments. *See id.* Mr. Branch avers that "[e]ach clamp is stamped with a machine and date code, inspected, and verified in Hunt Valley, Maryland." *See id.*

Furthermore, Mr. Branch states that, "[a]lthough clamps may be sold individually to a distributor, the clamps are usually sold as a component part in a pipe kit." *See id.* at ¶ 6. According to Mr. Branch, "[o]nce a clamp is sold to a distributor, [Defendant] does not have any role in sale to the end user. The end user could purchase the clamp or pipe kit from any retailer selling plumbing materials." *See id.* at ¶ 9. Mr. Branch explains that, "[f]rom January 1, 2010 through the present, [Defendant] never advertised products in the State of New York." *See id.* at ¶ 19. Moreover, Mr. Branch avers that Defendant has never sold clamps directly to Plaintiff nor has it ever conducted any business directly with Plaintiff. *See id.* at ¶¶ 7-8.

Mr. Branch also claims that Defendant "was not authorized, licensed or registered to do business in the State of New York." *See id.* at ¶ 10. Furthermore, according to Mr. Branch, "[p]rior to September 24, 2010, [Defendant] employed one salesperson in New York" and has not had any employees in New York since that time. *See id.* at ¶ 14. Mr. Branch also contends that, "[b]etween January 1, 2010 and December 31, 2016, [Defendant] made 65,535 total shipments of all of its products nationwide. Of those 65,535 shipments, only 1,755 were made to a New York entity for a total of 2.68% of the total shipments." *See id.* at ¶ 22. Moreover,

> [f]rom January 1, 2010 through December 31, 2016, only 2.78% of [Defendant's] total revenue for those seven years was derived from any New York entity. [Defendant's] actual sales for the seven year time period totaled $67,976,293.00, only $1,894,395.00 of which was derived from a New York entity. This works out to an average of only $270,627.86 of total revenue derived from a New York entity per year.

*See id.* at ¶ 23.

Furthermore, Mr. Branch asserts that Defendant "does not have any records of any sales

made to Utica Plumbing Supply." *See* Dkt. No. 18-1 at ¶ 3.[3] Mr. Branch also states that Defendant "sells its products to various large scale distributors throughout the country, including in the Northeast Region." *See id.* at ¶ 4. Thus, according to Mr. Branch, "Utica Plumbing Supply could have purchased the PEX clamp at issue from any of [Defendant's] large scale distributors." *See id.* Finally, Mr. Branch acknowledges that Defendant "does have a website in which customers can place inquiries for quotes . . . [h]owever, the website does not allow customers to place orders or purchase products[; and the] website has not derived any revenue from New York." *See id.* at ¶¶ 5-6.

"'In assessing whether personal jurisdiction is authorized, "the court must look first to the [long-arm] statute of the forum state, in this instance New York."'" *Eastboro Found. Charitable Trust v. Penzer*, 950 F. Supp. 2d 648, 654 (S.D.N.Y. 2013) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d at 208 (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997))) (footnote omitted). "'"If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process."'" *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d at 208) (footnote omitted).

In pertinent part, New York's long-arm statute authorizes personal jurisdiction over a non-domiciliary where the non-domiciliary "3. commits a tortious act without the state causing injury to person or property within the state, . . . if [it] . . . (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international

---

[3] Mr. Branch does not state whether Defendant made any sales to Howland Pump and Supply Company, Inc., the purported owner of Utica Plumbing Supply and the entity that would likely be the company that made all purchases related to products that Utica Plumbing Supply sold.

-8-

commerce; . . ." N.Y. C.P.L.R. § 302(a)(3)(ii). A plaintiff must satisfy five elements to establish personal jurisdiction under § 302(a)(3)(ii).

> ***First***, that defendant committed a tortious act outside the State; ***second***, that the cause of action arises from that act; ***third***, that the act caused injury to a person or property within the State; ***fourth***, that defendant expected or should reasonably have expected the act to have consequences in the State; and ***fifth***, that defendant derived substantial revenue from interstate or international commerce.

*LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000) (emphasis added).

With regard to the first three elements, Plaintiff has alleged that Defendant designed and manufactured the defective clamp outside New York and that the clamp malfunctioned in New York, causing extensive damage to Plaintiff's property in Whitesboro, New York. Based on these allegations, the Court finds that Plaintiff has satisfied these three elements.

"The fourth element – contemplating 'in-State consequences' -- is met when '[t]he nonresident tortfeasor . . . expect[s], or ha[s] reason to expect, that [its] tortious activity in another State will have *direct* consequences in New York[.]'" *Id.* (quoting *Ingraham v Carroll*, 90 NY2d 592, 598 [(1997)]). As the New York Court of Appeals has discussed, this "element 'is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere[.]'" *Id.* at 215 (quoting *Ingraham v. Carroll*, 90 NY2d, at 598). "Moreover, the defendant need not foresee the specific event that produced the alleged injury. The defendant need only reasonably foresee that any defect in its product would have direct consequences within the State[.]" *Id.* (citations omitted); *see also Schaadt v. T.W. Kutter, Inc.*, 169 A.D.2d 969, 970 (3d Dep't 1991) (stating that foreseeability requires "a discernible effort to directly or indirectly serve the New York market" (citations

omitted)). "'The test of whether a defendant expects or should reasonably expect [its] act to have consequences within the State is an objective rather than subjective one.'" *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (quotation omitted). In sum, "the foreseeability requirement is not satisfied unless there are '"tangible manifestations" showing that the nondomiciliary defendant . . . either should have known where [its product was] destined or "was attempting to reach a New York market."'" *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 363-64 (S.D.N.Y. 2009) (quotation omitted).

In this case, it is undeniable that Defendant runs an interstate business that knowingly ships its products to New York. Indeed, Defendant admits to $1,894,395.00 in sales and 1,755 individual shipments to New York since 2010. Furthermore, Defendant admits that it sells a significant amount of its products to other distributors that create pipe-kits that are then distributed throughout the country, including New York. Although Defendant argues that its New York sales and shipments represent just a tiny fraction of its overall numbers, *i.e.*, 2.78% of total revenue and 2.68% of total shipments, Defendant is clearly aware that its products enter New York and are being used in New York. Furthermore, Defendant's website provides at least some interactivity with customers who could be located in New York.[4] Based on this record, the Court finds that Plaintiff

---

[4] Defendant contends that it does not have the requisite contacts with New York because its "website does not facilitate the sale of goods to anyone." *See* Dkt. No. 18-2 at 6. In particular, Defendant asserts that "[n]o merchandise is sold on the website," but rather "an entity can make inquiries . . . as to pricing and other product information." *See id.* Thus, Defendant argues that its website's existence "cannot form the basis of imputing long arm jurisdiction onto [D]efendant." *See id.* To support this position, Defendant relies on *Pyramid Co. of Onondaga v. Land Co. of Osceola Cty., LLC*, No. 5:08-CV-00392, 2008 WL 11335073 (N.D.N.Y. Oct. 22, 2008), wherein the court determined "'that the level of interactivity and commercial nature of the exchange of information that occurs on the Web site does not rise to the level of conferring personal jurisdiction over the defendants.'" *Id.* at *7 (quotation omitted).

(continued...)

has established that Defendant should have foreseen that its products could cause injury in New York.

The fifth element "is designed to narrow 'the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but "whose business operations are of a local character[.]"'" *LaMarca*, 95 N.Y.2d at 215 (quoting *Ingraham v Carroll*, 90 NY2d, at 599). In this case, Defendant effectively admits to running an interstate business, thus satisfying this element.

In sum, for the above-stated reasons, the Court concludes that Plaintiff has alleged sufficient facts in its proposed amended complaint to make a *prima facie* showing of personal jurisdiction over Defendant based on New York's long-arm statute, specifically § 302(a)(3)(ii).

The Court must next determine whether its exercise of personal jurisdiction would comport with the requirements of due process. There are two components to the due process analysis, "the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)).

"The minimum contacts inquiry requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citations omitted). Courts "'focus[] on the relationship among the defendant, the forum, and the

---

[4](...continued)
This case is clearly distinguishable from *Pyramid Co.*, which dealt with a website that had far fewer interactive features, *e.g.*, the website at issue in *Pyramid Co.* did not have a fillable contact form or an online catalog to view products. Moreover, Defendant ignores all of the other contacts it has with New York.

litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Id.* at 335 (quoting *Walden v. Fiore*, --- U.S. ---, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014)).[5] Moreover, "the relationship between the defendant and the forum 'must arise out of contacts that "defendant *[it]self*" creates with the forum.'" *Id.* (quoting [*Walden*, 134 S. Ct.] at 1122 (citing *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174)). In other words, "however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Rush*, 444 U.S., at 332, 100 S. Ct. 571). Accordingly, for example, the Supreme Court has

> upheld the assertion of jurisdiction over defendants who have purposefully "reach[ed] out beyond" their State and into another by, for example, entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum State, . . ., or by circulating magazines to "deliberately exploi[t]" a market in the forum State, . . . . And although physical presence in the forum is not a prerequisite to jurisdiction, . . ., physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact. . . .

*Id.* (internal quotations and citations omitted).

In this case, as discussed above, Defendant has initiated multiple contacts with New York State. In that regard, by its own admission, it has earned nearly two million dollars in revenue from New York, and it has made 1,755 individual shipments over the last several years to customers in New York, all related to its sale of its clamps and other products.

---

[5] This case only implicates specific jurisdiction, which "depends on an 'affiliatio[n] between the forum and the underlying controversy[.]'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation and other citation omitted). In contrast, "'general' jurisdiction . . . permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit[.]" *Walden*, 134 S. Ct. at 1121 n.6.

Furthermore, the Court rejects Defendant's argument that it does not have the requisite minimum contacts to establish personal jurisdiction because it merely placed the defective clamp into the stream of commerce and "had no say in the end user of the clamp." *See* Dkt. No. 11-8 at 14 (citing *Asahi Metal Indus. Co. v. Superior Court of CA, Solano Cty.*, 480 U.S. 102, 116 (1987)). Defendant oversimplifies its contacts with New York. By its own admission, Defendant has done far more than merely place its products in the stream of commerce. Rather, it has actively sent many shipments to New York, as result of which, it has derived significant income. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) (stating that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" (citation omitted)); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (stating that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum"). In this case, Defendant's products arrived in New York, not because of the fortuitous current of the stream of commerce but because Defendant actually made shipments to New York and to distributors that serviced New York. *See, e.g., Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (concluding that, "[i]n actually sending items to New York, there can be no doubt that [the defendant's] conduct was '*purposefully directed toward the forum State*'" (quotation omitted)).

Based on this record, the Court finds that Plaintiff has made a *prima facie* showing that Defendant has sufficient minimum contacts with New York to justify this Court's exercise of personal jurisdiction over Defendant.

"The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' -- that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citation omitted). In making this determination, the court must analyze the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* (citations omitted).

"Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Bank Brussels*, 305 F.3d at 129 (quotation omitted).

Defendant generally argues that the costs associated with litigating this case in New York are burdensome; New York has no interest in this matter; and there is no public policy reasons to support personal jurisdiction. *See* Dkt. No. 11-8 at 15-16. Undoubtedly litigating this case in a forum distant from the state in which Defendant's corporate headquarters is located would cost more than doing so in Defendant's home state; however, this argument cuts both ways because most of the evidence and the witnesses in this case are located in New York. Defendant's other arguments are vague and conclusory. Therefore, the Court finds that Defendant has not presented a "compelling" reason that would render the authorization of personal jurisdiction over Defendant unreasonable. Accordingly, the Court concludes that exercising personal jurisdiction over Defendant does not

offend the traditional notions of fair play and substantial justice.

In sum, because the Court finds that Plaintiff has alleged sufficient facts in its proposed amended complaint to make a *prima facie* showing of personal jurisdiction sufficient to withstand Defendant's motion to dismiss, the Court grants Plaintiff's cross-motion to amend its complaint and denies Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**C.     Plaintiff's cross-motion to join a non-diverse party**

Pursuant to 28 U.S.C. § 1447(e), "[i]f after removal, the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." *Id.* The court uses a two-step process to determine whether to permit joinder and remand the case to state court. First, the court must consider whether Rule 20 of the Federal Rules of Civil Procedure allows joinder. "If joinder is permissible, the second step requires the Court to conduct a 'fundamental fairness' analysis to 'ascertain whether the balancing of certain relevant considerations weighs in favor of joinder and its necessarily attendant remand.'" *Durstenberg v. Electrolux Home Prods., Inc.*, No. 15 Civ. 9277, 2016 WL 750933, *1 (S.D.N.Y. Feb. 23, 2016) (quoting *McGee v. State Farm Mut. Auto Ins. Co.*, 684 F. Supp. 2d 258, 262 (E.D.N.Y. 2009)).

Rule 20 provides, in pertinent part, that

> [p]ersons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Plaintiff alleges that Howland Pump is the corporate owner of Utica Plumbing Supply, the retailer that sold Plaintiff the defective clamp. Furthermore, Plaintiff seeks relief jointly and severally against Defendant and Howland Pump. *See, e.g., Durstenberg*, 2016 WL 750933, at *1 (finding "no serious question" regarding whether adding a retailer to a products liability case complied with Rule 20).[6] For these reasons, the Court concludes that joinder of Howland Pump as a Defendant to this action comports with Rule 20.

"'District courts in this Circuit . . . permit a joinder which destroys diversity only when consistent with principles of fundamental fairness as appraised using the following factors: (1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment." *Nazario v. Deere & Co.*, 295 F. Supp. 2d 360, 363 (S.D.N.Y. 2003) (citations omitted). Accordingly, a court will permit joinder of a non-diverse party only when these factors weigh in the moving party's favor. *See id.* (citation omitted).

The first factor, delay, is measured from the date of removal. *See id.* Defendant removed this action to this Court on February 28, 2017; and Plaintiff cross-moved to join Howland Pump and to remand on July 23, 2017, nearly five months later. In addition, Plaintiff filed its cross-motion to join and remand in response to Defendant's motion to dismiss. Plaintiff explains that it did not name Howland Pump as a defendant earlier because Plaintiff's counsel did not know that Plaintiff

---

[6] The Court notes that, in response to Plaintiff's cross-motion to join Howland Pump, Defendant did not address whether joinder would comport with Rule 20.

had purchased the PEX clamp from Howland Pump at the time Plaintiff commenced this law suit. *See* Dkt. No. 17-16 at 7.

Despite the seven months between the removal and Plaintiff's cross-motion to join Howland Pump, the Court finds that there was a legitimate reason for the delay and that the delay was not unduly long. Therefore, the Court finds that this factor weighs in favor of allowing joinder.

With regard to the issue of prejudice, Defendant only complains that Plaintiff made its cross-motion "solely to force this Maine defendant with operations in Maryland and Canada to be dragged through New York State Court for no reason." *See* Dkt. No. 18-2. As discussed above, based on Defendant's contacts with New York, it is not unreasonable or prejudicial to expect Defendant to litigate in New York when one of its products allegedly malfunctioned and caused injury in this state. Therefore, the Court finds that this factor weighs in favor of allowing joinder.

With regard to the third factor, *i.e.,* the likelihood of multiple litigations, the Court finds that this factor weighs in favor of joinder because denying joinder would force Plaintiff to file a separate law suit in state court against Howland Pump.

Finally, with regard to Plaintiff's motivation to join Howland Pump as a party, Defendant contends that this is "blatant forum shopping, and should not be permitted[.]" *See* Dkt. No. 18-2 at 12. In light of the fact that Plaintiff originally filed this action in state court and, at that time, was not aware of Howland Pump's existence, as well as the fact that Plaintiff seeks to join Howland Pump as a Defendant because Howland Pump is the corporate owner of the retailer from which Plaintiff purchased the allegedly defective clamp, the Court finds Defendant's argument that Plaintiff is forum shopping without merit.

Accordingly, weighing all of the relevant factors, the Court concludes that the principles of

fundamental fairness weigh in favor of allowing Plaintiff to join Howland Pump as a Defendant in this action. Therefore, the Court grants Plaintiff's cross-motion to join Howland Pump as a Defendant and, as a consequence of such joinder, remands this case to state court.

## IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's cross-motion to amend its complaint and to join Howland Pump as a Defendant, *see* Dkt. No. 17, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff shall file and serve its amended complaint within **ten (10) days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, *see* Dkt. No. 11, is **DENIED**; and the Court further

**ORDERS** that, after Plaintiff files its amended complaint, which will, among other things, name as a Defendant to this action, a non-diverse party, *i.e.*, Howland Pump, this action shall be **REMANDED** to state court because this Court will no longer have subject matter jurisdiction over this action; and the Court further

**ORDERS** that the Clerk of the Court shall, at the appropriate time, mail a certified copy of this Memorandum-Decision and Order to the Clerk of New York Supreme Court, Oneida County, as 28 U.S.C. § 1447(c) requires.

**IT IS SO ORDERED.**

Dated: September 8, 2017
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge